Carr, J.
This is a bill to rescind a contract for the sale and purchase of land, which has been carried into execution by the vendee taking possession and paying *266 the purchase money, and to recover back the purchase money with interest. To justify a decree of this kind, there must be a pretty strong case; and that stated in the bill is quite strong enough. It charges, that Lowther represented the title to the land as unquestionable, and agreed to convey it to him with general warranty; but that, in drawing up the contract, he practised upon him a gross fraud, in stating that he acted under a power of attorney from Cochran, and would make such deed as that authorized, whereas he had never said one word to the plaintiff about this power, nor did the plaintiff ’(who is illiterate and unable to read writing) know, till after-wards, that there was such an expression in it, but expected to receive his deed from the vendor himself with general warranty. The bill further states, that the defendant ha§ tendered a deed with special warranty, under Cochran’s power of attorney, which he had rejected ; that he had been sued for the land, and thought he was likely to lose it.' This, I repeat, is a strong case, and if tolerably made out, would call for a decree of rescission and refunding. Let us examine the proofs. We know that by the long established rule of equity, the answer, where responsive and positive, has the weight of two witnesses, or of one with pregnant circumstances: this is on the ground, that the plaintiff forces the defendant to answer, and that his answer, if against himself, would be conclusive. The answer before us, contradicts,‘positively and directly, every charge of fraud, or misrepresentation; and if the answer be true, this is certainly not a contract to be rescinded. The written contract has two subscribing witnesses. If any body could tell us truly, what the contract was, and whether truly set down in the written articles, it would seem that these are the men; persons to whom the parties themselves have given credit, by calling upon them to subscribe as witnesses. These witnesses disprove the allegations of the bill, and prove the truth of the *267 answer. [Here the judge stated the evidence of W. 'Lowther and Ferine.'] I refer to this evidence, particularly, because these subscribing witnesses are the only persons who tell us one word about the agreement. No testimony has been taken to discredit them; and unless there be something in the matter or manner of their evidence shewing the contrary, we must take them for good men and true. It was said, that their stories did not agree; that they contradict one another. It does not seem to me that there is any conflict. Where witnesses have combined to tell a made up story, they generally agree to a word: but where two persons arc called to speak to a transaction of some standing, and each remembers for himself, we find, in nine cases out of ten, that there are differences between them; one recollects better than the other; a-particular incident strikes the mind of one, with more force than the other. But these natural variances, so far from weakening the evidence, are generally considered as stamping it with the seal of truth. It is evident too, that the witnesses here had not the same opportunities. Ferine was present at the beginning of the contract; 'Lowther, only after it was made, and nearly reduced to writing. It was said also, that these are witnesses to a written agreement, which their testimony cannot be received to contradict or vary. This is very true; but it is equally so, that w'here the agreement is ambiguous, or charged to be falsely written, parol proof may be called in to shew what the parties meant, and whether the charge be true. Here, the bill charges that nothing was said in the contract about a power of attorney, or a special warranty, and that this was fraudulently introduced into the agreement. It is, surely, proper to call the subscribing witnesses to speak as to this; and this they clearly disprove. The agreement too, standing by itself, does not clearly import the kind of title to be conveyed. The vendor agrees to sell and convey according to a *268 power of attorney, made to him, by Cochran. Now, the witnesses prove the understanding as to this, that the vendor expressly refused to make a general warranty, as he had bought only Cochran's right, and the power of attorney enabled him to convey no more. A strong and ingenious argument was founded on the fact, that the power of attorney filed has-no date, and was not admitted to record till some time after the agreement, and moreover states the land to contain 194 acres, while the agreement states it at 184 acres, as well as ascertained by the parties; thus shewing, that the power was executed after the agreement, and after that was reduced'to certainty, which was uncertain at the date of the contract. This was, indeed, a clumsy trick, if it was intended to pass off this new power as in existence at the date of the agreement: but it is clear, that this was not so meant: for the answer refers to both powers, the first as left in the possession of Given, the second as of record in the county of Harrison, and prays that both; if they can be obtained, may be taken as part of the answer. Why the first power was not produced, we are not told. Given, if accessible at all, was equally so to both parties; and if the power of attorney was to make a general warranty, it would have availed the plaintiff much to shew it. But, in truth, he makes no such allegation: his point of reliance is, that by the contract, as really made, nothing was said about a power, but Lowther was himself to convey with general warranty. And this is disproved, 1. by the answer; 2. by the written agreement; and 3. by both the witnesses to it, who prove that it was correctly read, that the- power of attorney was expressly spoken of, and that Lowther refused to make any deed but as attorney, and with special warranty. To strengthen the ground of fraud and imposition, the plaintiff alleges, that he cannot read writing; but he has not proved it; on the contrary, the very manner in which he puts the question *269 to the witness, seems to infer the contrary. He does not ask him, “do you know whether I can read writing?” but, “do you know, whether I am scholar enough to transact my own business, where there are any writings required ?” and the witness answers, that he does not think him a judge of writings of that kind, or of any other that would contain much. Now, this is quite a different thing from being unable to read. But suppose he had proved himself wholly illiterate, i f the witnesses to the agreement are not perjured (for there can be no mere mistake in the facts they state), he was fairly and fully informed of the nature of the title, and meant to purchase no more than Cochran’s title. He said, he had seen Cochran, and knew all about the title. Again; he received a copy of the agreement, which he kept and has filed with his bill. If at the time the articles were executed, he knew nothing of the fact stated in the agreement, that Lowther sold under the power, can it be imagined that he had not discovered this before he paid the purchase money ? And if the agreement had really been for a deed with general warranty from Lowther himself, would he not, the moment he discovered this gross imposition, have stopped paying, and sought redress? From this view of the case, I am strongly inclined to think that the plaintiff bought only Cochran’s right,—that the deed offered him gives him what he contracted, for,—and that the chancellor’s decree is right.
Tucker, P.
It was admitted in the argument, and. rightly I think, that upon an agreement for the sale of lands, the vendor is to be considered as contracting for a general warranty, unless the contrary is expressly provided. If we confine ourselves, therefore, to the contract in this case, it is very clear, that a general warranty was contracted for, unless it could be shewn that the power of attorney referred to, confined the attorney *270 in fact to a special warranty of the title, and that it was either shewn to the appellant at the time of the contract, or its contents fairly and truly stated. This power of attorney, however, never has been produced. Its contents never have been proved, nor indeed has a foundation been laid for such proof, by shewing that it has been lost or mislaid. The appellee, however, introduced two witnesses to prove, that it was agreed between Rucker and himself, that he was only to make a deed with special warranty. But if the contract is to be interpreted as binding Lowther to a general warranty, this parol testimony is in direct conflict with the written article, and is therefore inadmissible. I am therefore of opinion, that the decree is erroneous in dissolving the injunction, Lowther having failed to comply with his contract, by procuring a deed with general warranty from Cochran. It is manifest, moreover, from the power of attorney executed by Cochran, since the contract, that Lowther cannot now, as attorney in fact, execute such a deed as Rucker is entitled to by the articles ; and the land having been recovered by superiour title, such a deed would, in truth, seem to be fruitless. What, then, should be done ? A rescission of the contract would seem to be indicated, as it cannot be specifically executed. But in that event Rucker' must have a decree for the purchase money. Against whom ? By the contract, he was to pay it to Lowther for Cochran; and although he says, he did not understand that he was contracting with Lowther only as Cochran's attorney, yet, as it was his own folly, not to read the instrument if he could, or not to demand that it should be read, and not to ask advice if he could not understand it, he must be held to its contents. It is proved, indeed, that the deed was read to him; and, moreover, it is not proved that he could not read it himself. He must, therefore, be considered as contracting with Cochran, his payments must be considered as hav *271 ing been made to Cochran, and his recovery of the purchase money may, and indeed must, be against him, if Lowthcr has paid it over. But though Cochran was made a party by the bill, yet no process appears to have been served on him, and he is certainly not before the court. Upon this state of the case, I think the decree should be reversed, the injunction reinstated, and the cause sent back, with a view to bring Cochran before the court, in order to enable it to make a proper decree between all the parties.
The other judges concurred with the president. Decree reversed, injunction reinstated, and cause remanded.